**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARY ELIZABETH JORDAN
FLICKINGER et al.,

    Plaintiffs,

        v.

TOYS R US, INC. et al.,

    Defendants.

CIVIL ACTION NO. 3:10-CV-305

(JUDGE CAPUTO)

**MEMORANDUM**

Before the Court are several motions in limine filed by both parties. (Docs. 105, 91, 93, 96, 143, 158, 159, 100, and 87.)  While a number of motions in limine were ruled on during oral argument, the Court believed these motions merited a separate memorandum opinion.

**BACKGROUND**

An extensive factual background to this suit is unnecessary here.  Suffice to say, this personal injury case was filed against Toys "R" Us, Inc. and related corporations (collectively, Toys "R" Us). One of the plaintiffs, Mary Elizabeth Jordan Flickinger, alleges she was severely injured at Toys "R" Us' flagship store in Times Square when a plastic bin from a bulk candy dispenser detached from a display carousel, striking and injuring her. Mrs. Flickinger brought a negligence claim, her spouse brought a loss of consortium claim, and her children brought negligent infliction of emotional distress claims against Toys "R" Us.

In advance of trial, the parties have filed a number of motions in limine.  Quite a few of them were decided on during oral argument.  The remaining motions in limine (Docs.

105, 91, 93, 96, 143, 158, 159, 100, and 87) are discussed below.

## DISCUSSION

### I. Motion in Limine to Apply Pennsylvania Law to Liability and Damages (Doc. 105)

Plaintiffs' motion in limine to apply Pennsylvania law to liability and damages will be denied. In assessing liability and damages at trial, the jury will apply New York law.

In choosing which law applies, a federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). Under Pennsylvania law, the court begins with an "interest analysis" of the policies of all interested states and then-based on the result of that analysis-characterizes the case as a true conflict, false conflict, or unprovided-for case. *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir.1991).

A true conflict exists "when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." *Lacey*, 932 F.2d at 187 n. 15. If a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." *In re Estate of Agostini*, 311 Pa. Super. 233 (1983). As explained in the Second Restatement of Conflict of Laws,

> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  In making this determination, the court looks:

> to see what contacts each state has with the accident, the contacts being relevant only if they relate to the "policies and interest underlying the particular issue before the court." When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.

*Cipolla v. Shaposka*, 439 Pa. 563, 566 (1970) (citations omitted).

"A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932 F.2d at 187. If there is a false conflict, the court must apply the law of the only interested jurisdiction. *See, e.g., Kuchinic v. McCrory*, 422 Pa. 620, 222 (1966).  Under Pennsylvania choice of law analysis, a false conflict exists "where the accident is fortuitous and the state where the accident occurred has no interest in the regulatory standard at issue." *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 170 (3d Cir.1980).  Where the site of an accident is not fortuitous, "the place of injury assumes much greater importance, and in some instances may be determinative." *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 401 (3d Cir.1987).

Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. *Lex loci delicti* (the law of the place of the wrong) continues to govern unprovided-for cases. *See, e.g., Miller v. Gay*, 323 Pa. Super. 466, 470 (1983).

In undertaking the analysis, the court first must look to see whether a false conflict exists. Then, if there is no false conflict, the court determines which state has the greater interest in the application of its law. *See Cipolla*, 439 Pa. at 565; *Lacey*, 932 F.2d at 187.

In *LeJeune*, a case involving a factual scenario similar to the present suit, the Third Circuit had to determine whether Pennsylvania or Delaware law applied in a personal injury case. The Plaintiff, a Pennsylvania resident, was injured while working in a Delaware steel mill. The injury was caused by an accident involving a piece of machinery at the mill. While Pennsylvania law recognized strict products liability claims, Delaware law did not. The court initially determined that there was no false conflict since Pennsylvania had an interest in protecting its citizens from defective products and Delaware had an interest in prescribing the rules concerning torts that occur within its borders. *LeJeune*, 85 F.3d at 1072. Further, the court found that the occurrence of the accident in Delaware was not fortuitous, since the accident occurred there because that was where the mill was located. Having determined that a "true conflict" existed, the court next examined which state had the greater interest in having its law applied, which essentially meant looking at what relevant contacts each state had with the accident. The court found that, while Pennsylvania's only contact with the accident did not involve substantive matters in the case but solely that the plaintiff was a Pennsylvania resident, the Delaware contacts were more substantial. *Id*. Delaware was the non-fortuitous site of the accident, and Delaware's contacts related to substantive issues in the case as to how and why certain conduct occurred. As a result, the court found that Delaware law should apply. *Id*.

Here, using the same logic, New York law should apply. It was not fortuitous that the accident occurred in New York and the policies underlying the pertinent laws of each state are in conflict.

Looking at these policies, there is a true conflict here for three reasons. First, while

4

Pennsylvania law does not have a "zone of danger" requirement in order to recover damages on a negligent infliction of emotional distress claim, *see, e.g.*, *Sinn v. Burd*, 486 Pa. 146 (1979), New York does, *see, e.g., Savva v. Longo*, 8 A.D. 3d 551 (N.Y. App. Div. 2004). Second, Pennsylvania law still adheres to the traditional hierarchy of premises liability, including the duty of landowners to business invitees to inspect the premises for hazards outlined at Restatement (Second) of Torts § 343 (1965), while New York law has dissolved the traditional common law premises liability distinctions and only makes landowners responsible for hazardous conditions they knew about or had constructive notice of, *see, e.g. Walsh v. Super Value, Inc.*, 76 A.D. 3d 371 (N.Y. App. Div. 2010). Third, New York law requires the reduction of lost future earnings to present value, *see, e.g., Hudson and Bronx Surface Transit Operating Auth.*, 568 N.Y.S. 2d 503 (Sup. Ct., N.Y. County, 1990), whereas Pennsylvania does not, *see, e.g., Kaczkowski v. Bolubasz*, 421 A.2d 1027 (Pa. 1980). These laws make New York law less plaintiff-friendly and more defendant-friendly than Pennsylvania law, and therefore there is a conflict between Pennsylvania wanting to protect its citizens and provide for ample damages in negligence suits, and New York wanting to limit liability for individuals and companies transacting business within its borders.

Employing the "true conflict" analysis and looking at which state has the greater interest in having its law applied, the Court finds New York should apply. Pennsylvania's only contact with the accident is that the Plaintiffs are Pennsylvania residents. As in *LeJeune*, that, by itself, is insufficient. Most significantly, the accident and the alleged negligent conduct occurred while the Plaintiffs were visiting Defendants' New York store,

5

and the accident's occurrence in New York was not fortuitous. Furthermore, New York's contacts with the accident relate to the substantive issues of the case as to why certain conduct did or did not occur. Thus, New York law should apply.

Plaintiffs argue that the accident's occurrence in New York was "fortuitous" and therefore the conflict between Pennsylvania and New York law is either "false" or, if "true," the fortuitousness of the accident means that New York's relationship with the case is not as significant as Pennsylvania's and therefore Pennsylvania law should apply.

However, under the relevant case law, "fortuitousness" is interpreted as meaning completely unintentional or accidental, the result of sheer happenstance. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1 (1964) involved an airline crash in Colorado in which a Pennsylvania resident traveling from Philadelphia to Phoenix, Arizona, was killed. The choice between Colorado and Pennsylvania law was important because there was a severe limitation on damages under Colorado, but not Pennsylvania, law. The court held that Colorado had relatively little interest in the measure of damages because the defendant did not act in reliance on Colorado law, particularly inasmuch as the site of the accident was purely *fortuitous*. 416 Pa. at 22. On the other hand, Pennsylvania's interest was great, as the decedent's relationship with the airline was entered into in Pennsylvania where he purchased his ticket, the administration of his estate was in Pennsylvania, and Pennsylvania was concerned with the welfare of his surviving dependents to the end that they obtain full recovery. *Id.* at 24.

In contrast, in *Shuder v. McDonald's Corp.*, 859 F.2d 266 (3d Cir. 1988), a Pennsylvania plaintiff brought negligence action against restaurant franchisor for injuries sustained in parking lot fall at Virginia franchisee's restaurant. Virginia law made

contributory negligence a bar to recovery, while Pennsylvania followed comparative negligence doctrine. After determining that a true conflict existed, the Third Circuit next looked at which state had more significant contacts and determined that it was Virginia. Factors in reaching this conclusion included that the accident occurred in Virginia, that plaintiffs voluntarily went to that state, and that the place of the accident was *not fortuitous* as it involved a condition on the property. *Shuder*, 859 F.2d at 272.

In this case, Plaintiffs were in Times Square on a sight-seeing trip to NY. This was an intentional act on the part of the Plaintiffs. Unlike in *Griffith*, it is not as though Plaintiffs were traveling from Pennsylvania to Massachusetts, and happened to have an accident in New York. Rather, like in *Shuder*, Plaintiffs purposefully went to New York for vacation, and the accident involved a condition in the store, i.e., the candy display and dispenser. Therefore, Plaintiffs' accident does not meet the standard of "fortuitousness" under the applicable case law. Because New York has the most significant relationship to this suit, New York law will apply.

Finally, Plaintiffs argue that the court may apply New York law to liability and Pennsylvania law to damages, a procedure known as "depecage." *See, e.g., Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006). However, the salient points of the analysis concerning which damages law applies is essentially the same as the analysis concerning the applicable liability law: namely, the site of the accident was not fortuitous; a true conflict exists between Pennsylvania's and New York's laws regarding assessing future lost wages; and New York has the more significant relationship to the incident than Pennsylvania. Therefore, New York law will apply to both liability and damages.

### II. Motion in Limine to Strike the Expert Reports of Neil Growney and Michael Pepe and Preclude their Testimony (Doc. 91)

Messrs. Growney and Pepe will not be permitted to testify as to any of the legal conclusions contained in their expert reports.

Rule 702 of the Federal Rules of Evidence, consistent with *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge is to act as a gatekeeper to make sure that all expert testimony or evidence is both relevant and reliable. *Id.* at 589. Expert testimony "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Id.* at 592. "Put differently, an expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue-but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 152 (3d Cir.1999).

The Third Circuit has explained that, under Fed. R. Evid. 702, expert testimony "(1) must be based on sufficient facts and data; (2) must be the product of a reliable methodology; and (3) must demonstrate a relevant connection between that methodology and the facts of the case." *Jaasma v. Shell Oil Co.*, 412 F. 3d 501, 513 (3d Cir. 2005).

A district court has discretion to determine whether expert testimony will help the trier of fact. *United States v. Agnes*, 753 F.2d 293, 303 (3d Cir.1985), *abrogated on other*

*grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir.1998). In *Berckeley Inv. Group, Ltd. v. Colkitt*, however, the Third Circuit held:

> [I]n utilizing that discretion . . . the District Court must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury.

455 F.3d 195, 217 (3d Cir. 2006) (internal citations omitted).

Here, allowing Messrs. Growney and Pepe to testify as to the legal conclusions contained in their reports would be tantamount to exactly the usurpation the Third Circuit has warned about. As an example, essentially every conclusion in Mr. Growney's report dated December 27, 2010 is a legal conclusion, e.g., "Toys 'R' Us had exclusive control over this dangerous condition," "Toys 'R' Us employees created this dangerous condition," "[a] substantial cause of Mrs. Flickinger's injuries was Toys "R" Us' failure to properly secure the incident bin to the M&Ms display." Similarly, all of Mr. Pepe's conclusions in his December 13, 2010 report are legal conclusions, e.g., "[t]his accident could not happen in the absence of negligence on the part of Toys-R-Us." While Messrs. Growney and Pepe will be permitted to give expert testimony, they will not be permitted to testify as to any of these legal conclusions.

### III. Motion in Limine to Strike Expert Report and Preclude Testimony of Dr. Richard Fishbein (Doc. 93)

The expert report of Dr. Fishbein relating to his interview of Mr. James Flickinger – proffered by Plaintiffs in support of Mr. Flickinger's loss of consortium claim – will be stricken and he will be precluded from testifying as to the content of that report. While neither Dr. Fishbein's qualifications nor the contents of his report are at issue, the Court

finds that this evidence simply will not assist the jury and will be cumulative under Fed. R. Evid. 403.

Under New York law, loss of consortium includes loss of support and services, as well as elements of love, companionship, affection, society, sexual relations, solace, and more. *Millington v. Se. Elevator Co.*, 22 N.Y. 2d 498 (1968). Additionally, Fed. R. Evid. 403 provides for the exclusion of cumulative evidence.

Here, the Court finds that Mr. Flickinger is competent to testify as to any and all of the facts supporting his loss of consortium claim, and that Dr. Fishbein's testimony would not only not be unnecessary, it would also be needlessly cumulative.

### IV.   Motion in Limine to Preclude Hearsay Statement Made by Unidentified Toys R Us Employee (Doc. 96)

The hearsay statement allegedly made by an unidentified male Toys R Us employee to Mrs. Flickinger will not be admitted at trial. The alleged statement, "Ma'am, may I help you, we've been having some trouble with these," is inadmissible hearsay.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. Fed. R. Evid. 802. Plaintiffs claim that the proffered statement is either non-hearsay under 801(d)(2)(D) or an exception to the hearsay rule under 803(1), i.e., a present sense impression.

Pursuant to 801(d)(2)(D), a "statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the

relationship" is admissible as non-hearsay.  Here, since the identity of the declarant is unknown, it is impossible for the Court to discern whether the alleged statement regarded a matter within the scope of his employment.  Therefore, the alleged statement is not non-hearsay under 801(d)(2)(D).

Pursuant to Fed. R. Evid. 803(1), a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is excluded under the present sense impression exception to the hearsay rule.  A hearsay statement may be admitted under this exception if it explains or describes an event *personally* witnessed by the declarant, and if the declaration is made *essentially contemporaneous* to witnessing the event.  *U.S. v. Green*, 556 F.3d 151, 155 (3d Cir. 1999) (internal citation omitted) (emphasis added).  Here, the statement is not describing an event personally witnessed by the declarant, but refers instead to an occurrence or occurrences in the past, i.e., "we've *been having* trouble with these."  Furthermore, there is no indication from the statement that the declarant personally witnessed this "trouble" or rather heard about it second-hand.  Therefore, the present sense impression exception does not apply, and the statement will not be admitted.

**V.    Motion in Limine to Preclude Plaintiff's Experts from Offering Opinions Based on the Alleged Forces involved in the Incident (Doc. 143)**

Plaintiffs' biomechanical experts Messrs. Gustave, Calderon, and Cantor will be precluded from testifying as to whether the forces involved in the accident were sufficient to have caused Plaintiff's alleged injuries because their opinions do not meet the requirements for expert testimony under Fed. R. Evid. 702.  However, they will be able to testify solely as to the *nature* of the forces involved in the incident.

In this same suit, this Court has issued an Order precluding the reports and testimony of Dr. Nobilini regarding the impact Mrs. Flickinger sustained from the falling candy bin because they were not based on sufficient and appropriate testing.  Messrs. Gustave, Calderon, and Cantor, in criticizing Dr. Nobilini's testing in their affidavit\reports, point out, among other things, that Dr. Nobilini's use of a force gauge, rather than a test dummy or axis accelerator, was methodologically improper and unsound.  They also point out that Dr. Nobilini failed to test for a sufficient number of variables, e.g. Mrs. Flickinger's distance from the bin, her posture at the time of the accident, the weight and height of the candy bin, etc.  However, these experts did not do any independent testing in forming their opinions regarding the impact sustained by Mrs. Flickinger from the falling bin and whether it was sufficient to generate the injuries she has complained of.  After precluding Dr. Nobilini's reports and testimony for *insufficient* testing, it clearly would be both contradictory and grossly unfair to allow these experts to testify as to the relation between the impact and Mrs. Flickinger's injuries without them having done *any* testing.  However, these experts will be allowed to testify solely as to nature or type of forces involved in the incident, as these opinions can be ascertained solely from the angles and positions of Mrs. Flickinger and the display bin.

> **VI.    Motion in Limine to Preclude any Reference to Dr. Michael Lupinacci and to Quash Plaintiffs' Subpoena to Appear and Testify directed to Dr. Lupinacci (Doc. 158 and 159)**

Defendants' motions regarding Dr. Lupinacci will be denied.  Dr. Lupinacci performed an Independent Medical Examination ("IME") of Mrs. Flickinger in November 2010. Subsequently, in January 2010, he submitted a supplemental report which contained

medical conclusions significantly different from the original IME report.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Fed. Rule of Evidence 702, 703, or 705." Further, testifying experts must submitted a written report pursuant to Fed. R. Civ. P. 26(a)(2)(B). A party's access to an adverse party's expert hinges on whether or not the expert has been designated to testify. Fed. R. Civ. P. 26(b)(4)(D) states: "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." However, testifying experts are subject to Fed. R. Civ. P. 26(b)(4)(A), which states, "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." "The practical effect of a Rule 26(b)(2) designation is thus to bring an expert and his report within the universe of material that is discoverable by all parties and, generally, admissible at trial." *Penn Nat. Ins. v. HNI Corp.*, 245 F.R.D. 190, 193 (M.D. Pa. 2007).

Here, after designating Dr. Lupinacci as a testifying expert in Defendants' pre-trial memorandum (Doc. 78) and submitting Dr. Lupinacci's reports, Defense counsel now argues that Dr. Lupinacci is merely a consulting expert shielded from Plaintiffs' reach by Fed. R. Civ. P. 26(b)(4)(D). Clearly, in designating Dr. Lupinacci as a testifying expert, this protection was waived, and Defendants cannot undo this decision on the eve of trial. Therefore, Defendants' motions in limine (Docs. 158 and 159) will be denied, the subpoena will not be quashed, and Plaintiffs will be allowed to call Dr. Lupinacci as a witness at trial as well as submit his reports into evidence.

13

### VII.  Motion in Limine to Compel Live Testimony from Toys R Us Employees (Doc. 100)

Plaintiffs' motion in limine to compel live testimony from Toys R Us employees will be denied as it is beyond the powers of the Court. Although the Defendants are calling these employees as witnesses, they have refused to agree to produce them during Plaintiffs' case in chief.

Under Fed. R. Civ. P. 45(b)(2), unless it is pursuant to a federal statute, a district court can only serve subpoenas within the district, within the state pursuant to state statute or local rules, and within one-hundred miles of the location of the trial. Here, there is no federal statute in play, the witnesses are out of state, and they are not within one-hundred miles of the trial location. However, during oral argument on this motion, Plaintiffs cited *In re Gulf Oil/Cities Serv. Tender Offer Litig.* for the proposition that a district court can employ the discretion stemming from Fed. R. Evid. 611(a) to preclude a party who refuses to honor a reasonable request for production of a key witness subject to their control from calling the witness to testify personally during their presentation of evidence. 776 F. Supp. 838, 839 (S.D.N.Y. 1991). However, it does not follow that, since the Court can penalize the Defendants by forcing them to use depositions rather than live testimony for these witnesses, it has the power to compel the Defendants to produce them for Plaintiffs' case in chief. Therefore, this motion in limine will be denied.

### VIII. Motion in Limine to Preclude the Expert Opinion of Dr. Stephen B. Wilcox (Doc. 87)

As part of its omnibus motion in limine (Doc. 87), Plaintiffs move to preclude the opinions of Dr. Stephen B. Wilcox. This motion will be denied. After watching a video tape

of Mrs. Flickinger performing optometry exams, Dr. Wilcox submitted a report offering opinions as to Human Factors such as Mrs. Flickinger's posture, that he stated would help alleviate some of the pain Mrs. Flickinger claims is preventing her from working as much as she used to work.  Plaintiffs argue that the opinions should be precluded because Dr. Wilcox is not an expert in the field of Optometry and therefore is unqualified to make suggestions as to how Mrs. Flickinger should perform her job.  However, Dr. Wilcox is not offering medical opinions in Optometry, and the practicality or feasibility of his suggestions can be fully addressed by Plaintiffs on cross-examination.  Therefore, Dr. Wilcox will be permitted to give expert testimony as to Human Factors.

## **CONCLUSION**

The motions in limine presently before the Court (Docs. 105, 91, 93, 96, 143, 158, 159, 100, and 87)  have been analyzed and decided.  An appropriate order follows.


| | |
|---|---|
| 5/31/11 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MARY ELIZABETH JORDAN
FLICKINGER et al.,

    Plaintiffs,

        v.

TOYS R US, INC. et al.,

    Defendants.

NO. 3:10-CV-305

(JUDGE CAPUTO)

**ORDER**

**NOW**, this ___31st___ day of May, 2011, **IT IS HEREBY ORDERED THAT:**

(1) Plaintiffs' Motion in Limine to Apply Pennsylvania Law to Liability and Damages (Doc. 105) is **DENIED**.

(2) Defendants' Motion in Limine to Strike the Expert Reports of Neil Growney and Michael Pepe and Preclude their Testimony (Doc. 91) is **GRANTED in part and DENIED in part**. Messrs. Growney and Pepe will be allowed to testify, but not as to any of the legal conclusions in their reports.

(3) Defendants' Motion in Limine to Strike Expert Report and Preclude Testimony of Dr. Richard Fishbein (Doc. 93) is **GRANTED**.

(4) Defendants' Motion in Limine to Preclude Hearsay Statement Made by Unidentified Toys R Us Employee (Doc. 96) is **GRANTED**.

(5) Defendants' Motion in Limine to Preclude Plaintiff's Experts from Offering Opinions Based on the Alleged Forces involved in the Incident (Doc. 143) is **GRANTED in part and DENIED in part.**

(6) Defendants' Motions in Limine to Preclude any Reference to Dr. Michael Lupinacci and to Quash Plaintiffs' Subpoena to Appear and Testify directed to Dr. Lupinacci (Doc. 158 and 159) are **DENIED**.

(7) Plaintiffs' Motion in Limine to Compel Live Testimony from Toys R Us Employees (Doc. 100) is **DENIED**.

    (8)      Plaintiffs' Motion in Limine to Preclude the Expert Opinion of Dr. Stephen B. Wilcox (Doc. 87) is **DENIED**.

                                                  /s/ A. Richard Caputo  
                                                  A. Richard Caputo  
                                                  United States District Judge